IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

WILLIAM A. GROSS, INDIVIDUALLY

AND D/B/A 247 ATLAS TRANSPORTATION

                                    PLAINTIFF,

Vs.

PALOGIX SUPPLY CHAIN SERVICES
EPES LOGISTIC SERVICES, INC.
SCHNEIDER LOGISTICS, INC. AND
FORD MOTOR COMPANY.

                                    DEFENDANTS.

---

COMPLAINT OF FRAUD, FRAUDULENT CONSPIRACY IN BROKERING FREIGHT, CIVIL RACKETEERING, EXTORTION, AND VIOLATION OF IMPLIED DUTY OF GOOD FAITH

---

Comes now Plaintiff William Gross, individually and d/b/a/ 247 Atlas Transportation, LLC, by and through counsel of record, and files this Complaint of Fraud, Fraudulent Conspiracy, Civil Racketeering and Extortion, and Willful Violation of the Implied Duty of Good Faith. In support of his cause of action, he states the following:

JURISDICTION

1. The Court has original jurisdiction under the Racketeer Influenced and Corrupt Organization Act (RICO) 18 USC § 1962(d).

2. The Court also has jurisdiction under 18 USC § 1951 (Hobbs Act), which prohibits extortion that affects interstate commerce.

3. The Federal Court has diversity jurisdiction under § 1332(a) of the United States Code. The amount in controversy includes claims for general and special damages, attorney fees, and punitive damages that exceed $75,000.00.

4. The Federal Motor Carrier Safety Administration (FMCSA), as mandated by MAP-21 legislation, and the Uniform Commercial Codes require the complete legal separation of trucking businesses from brokering. Double brokering is the unauthorized re-brokering of a load to another trucking company and is a violation of FMSCA legislation. The Federal Motor Carrier Safety Act, administered by the Department of Transportation, regulates and oversees interstate motor carriers, including freight brokers.

5. The Plaintiff, William Gross, is an independently operated trucking company d/b/a 247 Atlas Transportation, LLC, who at all times relevant, worked primarily as an independent contractor for Epes Logistics Services, Inc. William Gross is a resident of Nesbitt, Mississippi. The illegal actions complained of in this complaint arose and continued in Memphis, Shelby County, Tennessee, where the Plaintiff unknowingly accepted loads at unlawfully double-brokered rates.

6. The Defendant, Epes Logistics Services, Inc., is a profit-oriented transportation company formed in North Carolina. Epes was the secondary broker of freight hauled by the Plaintiff. Epes' principal office is Kristen Petit, 538 N. Regional Road, Greensboro, NC 27425. The registered agent for service of process is Johnny Hill, 164 Barbara Drive, Talbot, TN 37877.

7. The Defendant, Schneider Logistics, Inc., is a motor carrier formed in Wisconsin. Schneider is located at 4880 Tuggle Road, Memphis, TN 38118. Its principal office is 3101

Packerland Drive, Green Bay, WI 54313-6187. Schneider was the logistics handler of the freight that is the subject of this lawsuit. The registered agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

8. Ford Motor Company is a Delaware corporation. Its principal office is located in the Tax Department, Ford World Headquarters, Room 612, 1 American Road, Dearborn, MI 48126-2176. The registered agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

9. Palogix Supply Chain Services is a third-party logistics management company and a contracted broker for Schneider on the Memphis, TN to Houston, Texas lane. Palogix is located at 19176 Hall Road, #125, Clinton Township, MI 48038.

10. Venue is proper in this District Court under 28 USC §§ 1391 (b) and 1391 (c) in that the claims arose and continued where the Defendants conduct business or can be found.

11. This case was originally filed under case number 2:24-cv-02538 in the United States District Court for the Western District of Tennessee and was dismissed without prejudice on July 14, 2025.

## FACTUAL ALLEGATIONS

12. The Plaintiff embarked on his journey as an independent trucking owner-operator at M and J Transportation around February 1, 2021. To enhance the productivity of his business, the Plaintiff used the load board (DAT or Dial A Truck) to locate brokered jobs.

13. In 2022, after hauling numerous loads for Epes Logistics Services, Inc. to Fort Worth, Texas, the Plaintiff's commitment to his work became evident as he began running more loads for Epes than other transportation brokers.

14. Thereafter, the Plaintiff began operating solely as a trucker for Epes, handling both outbound and inbound shipments. The route, hereinafter referred to as a 'lane,' was from Memphis to Houston. The average rate of pay for outbound loads was $2900 per load. The Plaintiff was responsible for finding return loads from Houston, referred to as inbound loads, which he found on DAT, a platform where Epes frequently posted freight.

15. The Plaintiff's operation of the Memphis-Houston lane was noted for timeliness of pickups and deliveries, and the quality of his work earned him the respect and confidence of those who engaged him as an independent contractor for transporting goods in interstate commerce.

16. After numerous discussions with Epes' lane manager, Lauren Berry, the Plaintiff was encouraged to dedicate his transportation business solely to moving loads for Epes. In turn, Epes guaranteed the Plaintiff consistent load transport from Memphis to Houston.

17. The Plaintiff's operation of the Memphis-Houston Lane proved so efficient that he expanded his business to four (4) trucks, dedicating himself almost exclusively to the lane, with annual earnings exceeding One Million Five Hundred Thousand Dollars.

18. The Plaintiff continued to operate the lane successfully, but was later cautioned by Berry not to mention Epes when picking up loads in Memphis. When the Plaintiff inquired about the reason, he was told that it was a long-standing operational practice aimed at streamlining the shipping process. He was instructed to log in as Palogix when picking up loads.

19. Later, the Plaintiff attempted to secure direct employment with Palogix. Melissa Rice, Palogix's account representative, informed him that he would be better off with Epes because, with Palogix, he would be lucky to get one load per week.

20. From January to July 2022, the Plaintiff was informed by Berry that Epes had to reduce the pay rate for its carriers to maintain the lane. In exchange for the reduction of carrier pay, Epes received a guarantee of fifty loads per week from Palogix. The Plaintiff was told that these types of agreements were standard practice in the trucking industry.

21. From August 2022 through January 2023, the Plaintiff's carrier pay rate steadily declined under the Plaintiff's independent employment with Epes. The Plaintiff began talking to people on the yard at Ford and overheard a phrase that was unfamiliar to him, "double brokering."

22. On January 30, 2023, the Plaintiff informed Lauren Berry of his concerns regarding double brokering by Epes and Palogix, as well as his declining pay rate. The Plaintiff expressed his intention to address the concern with Palogix. Lauren Berry told him that if "anyone poked the bear," all work would stop for that driver. Berry assured the Plaintiff, through a conversation captured on audio, that if their actions were reported, they would claim ignorance of their customer's identity.

23. On May 15, 2023, the Plaintiff, suspecting fraudulent activity against him, and using "John Tate's telephone," called Palogix and asked again about bidding directly to Palogix for work. This time, he spoke with Palogix's owner, Marvin Rons, who immediately began demanding Plaintiff's motor carrier and trucking identification numbers. The Plaintiff expressed fear of termination if he identified himself, to which Rons responded, "You bet your ass you would." As soon as the call terminated, the Plaintiff received a picture from Epes asking if he knew a John Tate. In the message, Lauren Berry included a picture of John Tate that she found on Facebook. Defendant Epes's agent, Lauren Berry, disclosed that Palogix suggested that Epes and Palogix "create a back-dated document to give the appearance of legality. These acts and deeds constitute fraud, fraudulent conspiracy, and civil conspiracy, and RICO violations to deter

and intimidate Plaintiff from discovering and protesting Defendant Epes and Palogix's profitable fraud against the Plaintiff. The individual acts of Palogix and the threats of the conspirators resulted in a high level of fear and duress to the Plaintiff. The fraud was intended to cause harm to the Plaintiff and a financial benefit to the Defendants.

24. On July 3, 2023, the Plaintiff contacted Eric Barnes, Head of Traffic at Schneider, about his concerns of double brokering by Epes and Palogix. Barnes refused to discuss rates with the Plaintiff, claiming he was only authorized to work with Palogix. Barnes stated, "Epes is why you're getting less." The Plaintiff asked to speak to Ford directly, and Barnes stated that reporting the problem to me is like telling Ford. He said, "If Schneider knows, Ford knows." After that, Eric Barnes blocked the Plaintiff's phone number. Defendant Schneider was aware of the illegal activities of Palogix and Epes and continued to provide loads to Epes under the guise of its contractual customer, Palogix, despite being aware of Defendant Epes and Palogix's prior perpetration of fraud against the Plaintiff, and the knowledge that its original brokered customer was Palogix. The adoption of the fraudulent acts of Defendants Palogix and Epes by Schneider and Ford was an agreement to pursue, further, or facilitate the unlawful endeavor of Defendants Palogix and Epes.

25. On August 10, 2023, Plaintiff, while picking up a shipment at the Memphis Tuggle location, spoke with Reginald Dotson, the building manager for Ford's Tuggle operation, about his concerns that Palogix and Epes were engaged in a fraudulent scheme to deprive Plaintiff of income substantially reduced by the double brokered rates of Palogix and Epes..

26. On July 24, 2024, the Plaintiff, after another significant pay rate decrease, ran into Eric Barnes in the Ford/Schneider parking lot. The Plaintiff told him, "You need to make the double brokering stop." Barnes responded, "You truckers need to do something, we're not." Defendant

Schnieder had a legal duty to ensure the lawful transport of its freight and breached its implied duty to Plaintiff when it was aware of Epes' and Palogix's unlawful activities and aided and abetted the fraud and conspiracy to the detriment of Plaintiff.

27. The Plaintiff repeatedly expressed his concerns to Defendant Ford about the illegal activities of Palogix and Epes. Still, his communication was ignored, or he was blocked from communicating with Ford Motor Company agents.

28. The Defendant, Ford Motor Company, is guilty of concealing, suppressing, fostering, aiding, and abetting the fraud perpetrated against the Plaintiff by Palogix and Epes after acquiring actual knowledge of the unlawful activity. The collusive acts of Ford and Schneider enabled a continuing fraud to be perpetrated against the Plaintiff. Ford Motor Company and Schneider overtly supplied the cargo, their acts intentionally and actively allowed the fraudulent acts of Defendants Epes and Palogix, resulting in substantial economic harm to the Plaintiff. The Plaintiff continuously sought the intervention of Ford and Schneider to stop the fraud, to no avail.

29. On December 12, 2024, Defendant Schneider's agent, Eric Barnes, emailed Plaintiff stating, "If you want, I can let Palogix know that you are not happy with me or the double-brokering."

30. Defendants Ford and Schneider's failure to withdraw from the unlawful conspiracy of Palogix and Epes to fraudulently deprive the Plaintiff of income constitutes overt and complicit involvement in the conspiracy.

31. The Defendants engaged in fraudulent activity against the Plaintiff when Ford and Schneider contracted with Palogix to transport goods, and knowingly participated in the fraud by allowing Defendant Epes to pose as its original customer, knowing that Epes was the

secondary broker. In furtherance of the civil conspiracy, Defendant Schneider allowed Epes to subtract an additional brokerage fee, which proximately caused a significant economic loss to the Plaintiff.

32. Defendants Ford and Schneider's failure to take action when they were aware of the fraud committed by Palogix and Epes constituted a deliberate and careless disregard of the Plaintiff's economic property rights. The Plaintiff sustained economic and emotional injury from the fraudulent activities of Palogix and Epes. Defendants conspired with one another to cause economic harm to the Plaintiff.

33. The Plaintiff has been harmed in his business and property by the Defendants' continuous violation of the RICO laws.

34. The Defendant Palogix conspired with Defendants Epes, Ford, and Schneider to fraudulently deprive the Plaintiff of income from 2022 through December 2024. Additionally, Defendant Palogix, via text to Schneider, overtly facilitated the termination of Plaintiff's employment with Epes because he protested their fraudulent activity. Defendant Epes, in furtherance of the conspiracy's objective, terminated the Plaintiff. Defendants Ford and Schneider overtly participated in the conspiracy by carrying out and acquiescing in its purpose, which involved terminating the Plaintiff's employment to deprive the Plaintiff of significant property and economic interests, and to further the conspiracy's purpose through extortion.

35. Defendants Epes and Palogix conspired to deprive the Plaintiff of a significant economic interest by conspiring to broker twice the loads transported by the Plaintiff, thereby depriving him of substantial income, and using wrongful threats of termination and intimidation to obtain property by force from the Plaintiff, including extracting his silence through financial blackmail and extortion.

36. The unlawful acts of the Defendants constitute extortion and directly affected interstate commerce, as the loads transported by the Plaintiff moved goods between Tennessee and Texas. The commerce is subject to federal laws and regulations and overseen by the Federal Motor Carrier Safety Administration (FMCSA).

37. 18 USC 1962(b)(d) states that it shall be unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate commerce.

38. 18 USC § 1951 (the Hobbs Act) prohibits extortion that affects interstate commerce, as well as conspiracies to do so. The Hobbs Act covers extortion, threats of economic harm, and blackmail.

39. Defendants' continuous acts of depriving the Plaintiff of substantial property rights constitute a pattern of racketeering activity that caused the Plaintiff to be injured in his business or property in violation of 1964(c).

40. Defendants have breached the implied duty of good faith under the Uniform Commercial Code, which imposes an obligation of good faith in the performance and enforcement of every contract or duty.

WHEREFORE, BASED ON THE ALLEGATIONS IN THE COMPLAINT, the PLAINTIFF DEMANDS:

1. Actual Damages for Three Million Dollars.
2. Treble Damages, including attorney fees and punitive damages.
3. Compensatory Damages.
4. For all other relief to which the Plaintiff may be entitled.
5. Plaintiff demands a jury to try the issues joined herein.

Respectfully submitted,

s/Linda K. Garner, BPR #13573
40 South Main Street, Suite 1523
Memphis, TN 38103
(901)5241111
(901)524-1004
Lgarner4@comcast.net